# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JANICE ARNETT, et al.,

      **Plaintiffs,**

vs.                                        **Case No. 8:08-CV-2373-T-27EAJ**

MID-CONTINENT CASUALTY
COMPANY, et al.,

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** are the parties' cross-motions for summary judgment (Dkts. 52, 61), their responses in opposition (Dkts. 62, 63), supplemental memoranda (Dkts. 102, 103, 104), motions to strike (Dkts. 67, 71), oppositions to the motions to strike (Dkts. 72, 76), and joint request for oral argument (Dkt. 60). Upon consideration, Plaintiffs' amended motion for summary judgment (Dkt. 61) and Defendants' motion for summary judgment (Dkt. 52) are GRANTED *in part.* The remaining motions (Dkts. 60, 67, 71) are DENIED.

### Synopsis

This is an insurance coverage action. The parties seek a declaration as to whether one of Defendants' five insurance policies covers a judgment entered in an underlying action and, if so, to what extent. The parties have filed cross-motions for summary judgment. Great American Insurance Company ("GAIC") and Mid-Continent Casualty Company ("MCC") argue that coverage is not available under any policies which became effective after the insured was aware of the damages. The undisputed evidence shows that the insured was aware that damages had occurred before the effective dates of MCC's three policies. Accordingly, MCC's policies afford no coverage for the underlying judgment.

-1-

GAIC issued the two remaining policies. Plaintiffs argue that the undisputed facts show the entire judgment is covered by GAIC's first policy. GAIC counters that a portion of the judgment is not covered because it does not represent 'property damage' as defined in that policy. The judgment was based on a general jury verdict that did not allocate between amounts that constituted 'property damage' and amounts that did not. The present record is rife with disputed issues of fact that are material to determining what amount of the judgment is covered by GAIC's policy, thereby precluding summary judgment on this issue.

MCC and GAIC request a declaration that three policy exclusions apply. The first two exclusions apply to property damage that occurred during construction. However, there is evidence that certain damages manifested after construction. The third exclusion they rely upon, the 'contractual liability exclusion,' does not apply to the facts in this case.

In addition to relying on the policy language and exclusions, MCC and GAIC raise several affirmative defenses to coverage. With respect to those affirmative defenses, Plaintiffs argue that GAIC failed to comply with Florida's claims administration statute. As a result, Plaintiffs contend that GAIC is estopped from raising several of its defenses. Although the Court agrees that GAIC did not comply with the statute, Plaintiffs are only entitled to partial summary judgment as to one of GAIC's defenses.

GAIC and MCC argue that they have no indemnity obligations relating to a judgment taxing costs against their insured. Because GAIC and MCC provided a defense to the insured, the policies require them to pay the judgment for costs.

Finally, GAIC and MCC seek summary judgment on their defense that the insured failed to cooperate after entry of judgment. The record contains sufficient evidence to permit a jury to find, first, that the insured did in fact cooperate, and second, that the insurers failed to act diligently and in good faith in attempting to bring about the insured's cooperation. Further, MCC and GAIC failed

to provide timely notice of this defense, as required by the claims administration statute. MCC and GAIC are not entitled to partial summary judgment on this defense.

## Background

In the underlying action, Janice Arnett sued the contractor responsible for constructing her home, Rudy Brown Construction Company ("RBC"), alleging that her residence contained numerous construction defects. GAIC and MCC insured RBC under five commercial general liability policies:

(1) GAIC's initial policy, effective July 13, 2001 to July 13, 2002 (Dkt. 52-4),

(2) GAIC's renewal policy, effective July 13, 2002 to July 13, 2003 (Dkt. 52-5),

(3) MCC's initial policy, effective July 13, 2003 to July 13, 2004 (Dkt. 52-6),

(4) MCC's first renewal policy, effective July 13, 2004 to July 13, 2005 (Dkt. 52-7), and

(5) MCC's second renewal policy, effective July 13, 2005 to July 13, 2006 (Dkt. 52-8).

Although RBC's insurers provided a defense in the underlying action, only MCC delivered a reservation of rights letter. MCC's reservation of rights letter did not identify GAIC or GAIC's initial policy which was effective July 13, 2001 to July 13, 2002.[1] (Dkt. 61-10).

At trial, Arnett presented evidence of construction defects and damage to her home caused by the defects. The windows were not properly installed. As a result, water intruded into the residence, causing damage. The HVAC system leaked due to improper installation, causing damage. Cracks formed in the stucco. The pool de-humidifier did not function properly, causing excessive humidity and moisture levels. The soil was not properly compacted, causing the structure to shift and twist. Evidence presented during the trial demonstrated that some damage manifested before the certificate of occupancy was issued on July 11, 2002. Other damage did not appear until after the Arnetts occupied the home.

---

[1] Policy No. 02-GL-000065634.

The jury returned a verdict of $718,000 for "[c]osts to repair the home" and $185,000 for "reasonable loss of use of the home." (Dkt. 61-5). The jury found that the date on which "Janice Arnett sustain[ed] damages to her home" was "July 11, 2002." (*Id.*). Based on the verdict, the trial court entered judgment against RBC for $1,297,998.36, which included damages and prejudgment interest from July 11, 2002. (Dkt. 61-6). Arnett was awarded $167,147.71 in costs. (Dkt. 61-8).

To collect on the judgment, Arnett attempted to attach RBC's property and assets. Rudy Brown signed an affidavit, averring that RBC would allow the execution, levy, and sale of its third party claims against several subcontractors who performed work on Arnett's home. On March 6, 2009, the state court conducted a hearing and entered an order directing the sheriff to execute, levy, and sell RBC's third party claims at a public auction. (Dkt. 62-8).

Based on Arnett's attempt to levy and sell RBC's assets, MCC and GAIC sent a letter to RBC on or about May 4, 2009, reserving the right to raise the insured's failure to cooperate as a defense to coverage. (Dkts. 52-13 at 5, 62-10). The insurers cited RBC's "decision to allow the Arnetts to execute, levy or sell the third party claims to satisfy the judgment for which you believe are covered claims without Great American's and Mid-Continent's consent and the Arnett's decision to execute, levy or sell those third party claims." (*Id.*). RBC filed an emergency motion to quash or continue the sheriff's sale, which the state court granted. The parties later settled the third party claims, and the public auction never occurred.

Arnett commenced separate declaratory judgment actions against GAIC and MCC. In both actions, Arnett sought a declaration that the insurers were obligated to cover the judgment against RBC under one or more policies. The actions were eventually consolidated. MCC and GAIC filed a counterclaim for a declaration that coverage was not available under their respective policies because: (1) the insured failed to cooperate, (2) the claims were barred by the damage to property exclusion, (3) the claims constituted known injuries, and (4) the claims did not involve 'property

damage' within the meaning of the policies. The parties seek summary judgment for a declaration of their respective rights under the policies.

## Analysis

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "The court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

## I.     Coverage for the judgment

### A.     The operative policy

The parties agree that the damage to Arnett's home occurred on or before July 11, 2002. It is therefore undisputed that the damage occurred during the period of GAIC's initial policy, which was effective from July 13, 2001 to July 13, 2002. Accordingly, Arnett and RBC argue, and the insurers do not dispute, that GAIC's initial policy is the operative policy.

### B.     Known losses

The insurers argue that RBC became aware of the damages during GAIC's initial policy, and therefore, the damages constituted 'known losses' which are not covered under any subsequent

policies. GAIC's renewal policy and the three policies issued by MCC provide:

> 1. Insuring Agreement
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II -- Who Is An Insured and no "employee" authorized by you to give or receive notice on an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(*E.g.*, Dkt. 52-5, § I, Coverage A, 1(b)(3)).

RBC does not challenge the insurers' contention that it was aware of the damage before MCC's first policy became effective. However, RBC disputes that it had knowledge of any damage before July 13, 2002, when GAIC's renewal policy became effective. There is evidence that some damages had not manifested, and therefore were not 'known,' before the period of GAIC's renewal policy. The pool de-humidifier was not installed until August 2002. (Trial Tr. 1410). Accordingly, the excessive humidity and moisture damage it caused did not occur until after GAIC's renewal policy became effective. (Trial Tr. 412-13, 1410). Similarly, the HVAC system caused damages to manifest after the effective date of GAIC's renewal policy. (Trial Tr. 397, 1413-14). These damages do not, therefore, constitute 'known losses' under GAIC's renewal policy.

On the other hand, Rudy Brown testified that the stucco cracked and the windows leaked before the certificate of occupancy was issued on July 11, 2002. (Trial Tr. 336, 459-61). The undisputed evidence demonstrates, therefore, that RBC was aware of this damage before GAIC's renewal policy became effective. Additional stucco cracking and water intrusion damage during later policy periods would constitute a "continuation, change or resumption" of that property damage

which, under the policies, would be "deemed to have been known prior to the policy period." (*E.g.*, Dkt. 52-5, § I, Coverage A, 1(b)(3)).

In sum, RBC has not demonstrated that it was unaware of the damage before the effective dates of MCC's policies. MCC's policies therefore afford no coverage for the underlying judgment. As for GAIC's renewal policy, the known loss clause bars coverage, but only for damages related to leaking windows and stucco cracking.

### C.  The insuring agreement

Although the known loss clause in GAIC's renewal policy does not bar coverage for all types of damage, RBC seeks summary judgment declaring the availability of coverage only under GAIC's initial policy. (Dkt. 61 at 8; Dkt. 62 at 16). GAIC's initial policy provides coverage for "bodily injury" or "property damage." (Dkt. 52-4, § I, Coverage A, 1(a)). The parties' dispute centers on what portion of the judgment constitutes 'property damage' within the meaning of that policy.

GAIC's initial policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . . " (Dkt. 52-4, § V.17). It is settled that defective construction does not constitute "property damage" within the meaning of GAIC's policy. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007). However, "faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the policy." *Id.* Coverage therefore extends to costs to repair damages caused by construction defects, but not to repair or replace the defective work itself. *See id.*; *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So. 2d 1241, 1246-49 (Fla. 2008). Accordingly, it must be determined whether the jury award included costs to repair construction defects, costs to repair damages caused by construction defects,

or both. *See Duke v. Hoch*, 468 F.2d 973, 976 (5th Cir. 1972) (applying Florida law).[2]

At trial, the evidence described several construction defects. There was evidence that those defects caused substantial damage to other areas of Arnett's residence. However, the jury verdict did not specify what amount, if any, was awarded to repair construction defects and what amount, if any, was awarded to repair damage caused by those defects. GAIC concedes that $114,222.09 of the jury verdict is attributable to repair of damage caused by construction defects. (Dkt. 52 at 19). Therefore, there is no dispute that at least $114,222.09 of the verdict represents 'property damage' which is covered by the policy.[3] Given this, GAIC has the burden of establishing that the verdict includes elements of damage outside the coverage of its initial policy. *Duke*, 468 F.2d at 976. As discussed, defective construction is not covered 'property damage' under GAIC's policy.

It is undisputed that the evidence at trial established that construction defects were present in Arnett's home. Further, both experts who testified as to Arnett's damages included costs to repair certain construction defects. Thomas Mack testified that it would require over $320,000 to repair the defectively constructed foundation. (Trial Tr. 1162-63). Lawrence Dobranski testified that the total cost to properly install the defectively-installed wood windows and metal-clad windows would be approximately $37,000. (Trial Tr. 1669-73). At a minimum, therefore, there is evidence supporting GAIC's contention that the general verdict was based, at least in part, on the cost of repairing defective construction, which is not covered by the policy.

If GAIC ultimately succeeds in showing that the "judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning or

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[3] Accordingly, this is not a case where "the evidence raises a question as to whether the entire claim is beyond the coverage of the policy." *See U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983).

allocating these damages is on the party seeking to recover from the insurer." *See U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983); *Duke*, 468 F.3d at 977. The parties agree that this is impossible.

However, insureds may be relieved of this "impossible burden of proof" where "the insurer failed to fully advise its insureds of the divergence of interest between it and them with respect to the [use of an allocated] verdict." *Duke*, 468 F.2d at 979-80. The insurer plainly has an interest in using a general verdict form when an action involves elements of both covered and non-covered damages. *Id.* at 979. To the insured, the inevitable consequence of a general verdict is a "catastrophic total loss of coverage." *Id.* But "the insurance company loses no benefit to which it is validly entitled from having the jury earmark the losses." *Id.* Accordingly, the insurance company is "required to make known to the insured the availability of a special verdict and the divergence of interest" between the insurer and insured "springing from whether damages [a]re or [a]re not allocated." *Id.*

The record contains no evidence that this disclosure was made to RBC. Neither the reservation of rights letter nor the presence of RBC's separate counsel is sufficient to discharge the insurer's obligation. *See id.* Therefore, based on the present record, RBC is relieved of the impossible burden of proving the precise amount awarded for covered damages. As a result, the Court must determine "as best he can the allocation which the jury would have made had it been tendered the opportunity to do so." *Id.* at 984.

The trial transcript does not permit a meaningful allocation. GAIC submitted the expert report of Richard Slider, which contains his opinion as to the amount of the verdict attributable to damages caused by defects. (Dkt. 53-1). Arnett and RBC submitted Thomas Mack's report from the

underlying action which identified specific costs required to repair the Arnett home. (Dkt. 78-1).[4] The reports and trial transcript, taken in the light most favorable to the non-moving parties, raise material issues of fact as to the proper allocation of damages, requiring a trial on this issue. Summary judgment is therefore improper.

## II. Exclusions from coverage

MCC and GAIC request a declaration that three exclusions bar coverage: exclusion j(5), exclusion j(6), and the contract liability exclusion.

### A. Exclusions j(5) and j(6)

The first two exclusions MCC and GAIC raise are found in paragraphs (j)(5) and (j)(6) of the policies. Those paragraphs provide:

> This insurance does not apply to:
> . . .
>
> j. "Property damage" to:
> . . .
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*E.g.*, Dkt. 52-4, § I, Coverage A, 2(j)(5)-(6)).

Exclusions j(5) and j(6) "operate in tandem, excluding coverage for property damage arising from ongoing work . . . ." *Oak Ford Owners Ass'n v. Auto-Owners Ins. Co.*, 510 F. Supp. 2d 812, 819 (M.D. Fla. 2007). "These exclusions do not apply, however, to off-premises property damage

---

[4] Arnett and RBC also rely on Mack's affidavit, which identifies the portion of costs in his report that are attributable to repairs of property damaged by construction defects. (Dkt. 62-19). MCC and GAIC moved to strike the affidavit. The motion is moot, however, as the trial transcript and expert reports alone raise disputed issues of fact.

arising from *completed* work." *Id.* (emphasis in original); *see*, *e.g.*, *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1011 (10th Cir. 2006) (exclusion j(5) applies to "damage from ongoing work, and not damage after completion"); Dkt. 52-4, § I, Coverage A, 2(j) (exclusion j(6) "does not apply to 'property damage' included in the 'products-completed operations hazard'"); *id.* at § V.16 ("products-completed operations hazard" includes all "'property damage'. . . arising out of . . . 'your work' except . . . [w]ork that has not yet been completed or abandoned"). Therefore, the pivotal question is whether the damage arose from ongoing construction or from work which had been completed.

"[U]nder Florida law, the general rule is that the time of occurrence within the meaning of an 'occurrence' policy is the time at which the injury first manifests itself," that is, the date on which the damage first becomes visible. *See Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 485 F. Supp. 2d 1302, 1310 (M.D. Fla. 2006) (quotation omitted). The jury found that "Janice Arnett sustain[ed] damages to her home" on "July 11, 2002," which was the date the certificate of occupancy was issued. (Dkt. 61-5). MCC and GAIC contend that this finding fails to address when the damages 'occurred' within the meaning of the policy. The insurers' argument falls short, however, because the verdict form specifically instructed the jury, "[i]f you have awarded damages to Janice Arnett for damages sustained to her home, then you must determine when those damages *first existed* and should indicate that date in Question Number 4." (Dkt. 61-5) (emphasis added). The jury therefore expressly addressed the date on which the damages manifested. Arnett and RBC argue that MCC and GAIC are bound by the jury's finding.

Generally, an insurer cannot relitigate fact issues in a subsequent coverage action because it was in privity with the insured in the underlying case. *See*, *e.g.*, *Southeastern Fidelity Ins. Co. v. Rice*, 515 So. 2d 240, 242 (Fla. 4th DCA 1987). However, an exception to the 'privity' doctrine

arises "where the interests of the insured and insurer are antagonistic towards each other in an initial tort adjudication." *Insurance Co. of N. Am. v. Whatley*, 558 So. 2d 120, 122 (Fla. 5th DCA 1990); *see also Britamco Underwriters, Inc. v. Central Jersey Invs., Inc.*, 632 So. 2d 138, 140 (Fla. 4th DCA 1994); *Progressive Am. Ins. Co. v. McKinnie*, 513 So. 2d 748, 749 (Fla. 4th DCA 1987); *State Farm Mut. Auto. Ins. Co. v. Brown*, 767 F. Supp. 1151, 1154-55 (S.D. Fla. 1991).[5]

MCC and GAIC contend that their interests were antagonistic to RBC with respect to the issue of when the damages manifested. In the underlying action, it was in RBC's best interest to show that the damage manifested after construction was completed, because exclusions j(5) and j(6) would not apply. By contrast, the insurers' interests were best served by showing that the damage manifested during construction. Because the insurers' interests were antagonistic with their insured, privity does not apply. *See McKinnie*, 513 So. 2d at 749; *Brown*, 767 F. Supp at 1155. The insurers are therefore not estopped from litigating the date on which the damages manifested.

MCC and GAIC argue that the undisputed facts show that the damages manifested during construction. Trial testimony showed that at least some types of damage were discovered during construction. There was evidence that the mahogany windows leaked several months before the Arnetts occupied the home. (Trial Tr. 459-61). Arnett testified that cracks formed in the stucco during construction. (Trial Tr. 1382-91).

Notwithstanding, the evidence also showed that other types of damage occurred after construction was complete. Water began to intrude into the master bedroom after the Arnetts moved into the house. (Trial Tr. 1425-26). The HVAC system caused condensation to form in the attic after

---

[5] In arguing that MCC and GAIC are bound by the verdict, Arnett and RBC rely on several cases which recite the general rule that an insurer is bound by factual determinations that were made in an underlying action against its insured. *See, e.g., Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 450 (Fla. 2005); *Gould v. Weibel*, 62 So. 2d 47, 49 (Fla. 1952); *Columbia Cas. Co. v. Hare*, 156 So. 370, 377 (Fla. 1934); *Grain Dealers Mut. Ins. Co. v. Quarrier*, 175 So. 2d 83, 86 (Fla. 1st DCA 1965). These cases do not sweep as broadly as Arnett and RBC suggest. None of these cases held that an insurer was bound by factual determinations against its insured, notwithstanding a finding that the insurer's interests conflicted with those of its insured. And certainly none purport to abrogate the exception to privity that arises when the interests of the insurer and insured conflict.

construction. (Trial Tr. 397). The pool de-humidifier began to cause moisture damage after the Arnetts occupied the home. (Trial Tr. 412-13, 1410).

Further, the trial testimony, taken in the light most favorable to the non-moving party, indicates that certain types of stucco cracking may have occurred after construction. (*See* Trial Tr. 339, 1391-92). Mack testified that four different factors caused the stucco to crack: curing, improper loading, differential substrates beneath the stucco, and structural shifting and twisting. (Trial Tr. 1103-16). Dobranski testified that two factors caused the stucco to crack: shrinkage and differential settlement. (Trial Tr. 1622-27). Although some stucco cracks formed immediately, MCC and GAIC have not demonstrated that each factor which ultimately caused the stucco to crack manifested during construction.

In sum, MCC and GAIC have not demonstrated that all types of damage manifested during construction. Summary judgment is therefore improper on exclusions j(5) and j(6).

### B.    The contractual liability exclusion

The third exclusion MCC and GAIC raise is the contractual liability exclusion. That exclusion provides:

> This insurance does not apply to:
> . . .
>
> b.  Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. *This exclusion does not apply to liability for damages:*
>
> *(1) That the insured would have in the absence of the contract or agreement . . . .*

(Dkt. 52-4, § I, Coverage A, 2(b) (emphasis added)).

Arnett and RBC argue that the exclusion does not apply. The Court agrees.  First, the policy's

plain language only excludes coverage for liabilities which the insured assumed in a contract or agreement. Although RBC undertook certain duties in the construction contract, MCC and GAIC have not identified any provision in which RBC assumed any indemnity obligations. Second, the exclusion does not apply to liabilities which the insured would have in the absence of the contract. At trial, Mack testified that Florida Statute chapter 489 imposed the same duties upon RBC as RBC's contract with Arnett. (Trial Tr. 1089-90). Accordingly, the contractual liability exclusion is not applicable to the facts of this case.

MCC and GAIC rely on *HC Waterford Properties, LLC v. Mt. Hawley Insurance Co.*, No. 08-22158-CIV, 2009 WL 2600431 (S.D. Fla. Aug. 21, 2009), *adopted* 2010 WL 49159 (Jan. 7, 2010) and *Century Surety Co. v. Hardscape Construction Specialties, Inc.*, 578 F.3d 262 (5th Cir. 2009). Both cases are factually distinguishable from the instant case. *HC Waterford* did not involve a "contractual liability" exclusion but an exclusion for damages based on the "breach of [an] express or implied contract." *Compare* Dkt. 52-4, § I, Coverage A, 2(b) *with* 2009 WL 2600431, at \*2. In *Hardscape Construction*, a subcontractor agreed to indemnify the contractor for damages arising out of the subcontractor's work. 578 F.3d at 264. The contractual liability exclusion applied in that case because the indemnity provision constituted the assumption of liability in a contract. As discussed, MCC and GAIC have not identified any contractual provision in which RBC agreed to assume any liability.

In sum, the contractual liability exclusion does not apply to the facts of this case. MCC and GAIC are not entitled to summary judgment on this ground.

## III.    Defenses to coverage

### A.    GAIC's affirmative defenses 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 17, 19, and 20

Arnett and RBC argue that GAIC is barred from raising several affirmative defenses because it failed to deliver a timely reservation of rights letter. Florida Statute § 627.426(2) requires a liability

insurer to provide written notice of its intent to assert a coverage defense within 30 days of the time the insurer knew or should have known of the defense. Failure to comply with this requirement precludes the insurer from denying coverage based on that defense. Fla. Stat. § 627.426(2).

Arnett and RBC contend that GAIC failed to deliver written notice of its intent to raise any coverage defenses until March 4, 2009. (*See* Dkt. 61-11). GAIC responds that MCC's September 2005 reservation of rights letter was sent on its behalf as well. That letter did not, however, reference GAIC or its initial July 2001 to July 2002 policy. Accordingly, MCC's letter did not constitute sufficient notice that GAIC intended to rely on any defenses to coverage under that policy. *See Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc.*, 534 So. 2d 1187, 1194 (Fla. 4th DCA 1988) ("Florida law requires strict compliance with section 627.426(2), Florida Statutes.") (citing *Auto Owners Ins. Co. v. Salvia*, 472 So. 2d 486, 488 (Fla. 5th DCA 1985)).[6] GAIC did not provide timely notice of its intent to raise any coverage defenses under its initial policy. As a result, GAIC is estopped from denying coverage under that policy based on any grounds which are "coverage defenses" within the meaning of the statute. *Id.*

"[T]he term 'coverage defense,' as used in section 627.426(2), means a defense to coverage that otherwise exists." *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989). "When the loss falls within the scope of coverage, but the insurer argues that other factors justify not fulfilling the contract, the insurer is asserting coverage defenses." *Mid-Continent Cas. Co. v. King*, 552 F. Supp. 2d 1309, 1316 (N.D. Fla. 2008). By contrast, when the insurer argues that coverage is "expressly excluded or otherwise unavailable under the policy or under existing law," the insurer is

---

[6] Some courts have found substantial compliance to be sufficient, so long as the insured received actual notice. *Phoenix Ins. Co. v. McCormick*, 542 So. 2d 1030, 1032 (Fla. 2d DCA 1989); *Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1544 (S.D. Fla. 1987). There has been no demonstration that RBC received actual notice of GAIC's intent to raise any coverage defenses under its initial policy before the March 4, 2009 letter.

not raising a coverage defense within the meaning of § 627.426(2). *AIU*, 544 So. 2d at 1000.

Arnett and RBC argue that affirmative defenses 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 17, 19, and 20 are coverage defenses which GAIC can no longer raise. GAIC counters that defenses 3, 8, 9, 10, 11, 12, 19, and 20 are based on policy exclusions, and defenses 4, 5, and 6 are based on damages that the policy does not cover. The Court agrees with GAIC. Defenses 3, 4, 5, 6, 8, 9, 10, 11, 12, 19, and 20 are not coverage defenses within the meaning of § 627.426(2). *See id.* These defenses can be raised notwithstanding GAIC's failure to comply with the claims administration statute.

GAIC does not challenge Arnett and RBC's motion for partial summary judgment as to defenses 7 and 17. As to defense 7, GAIC alleges that RBC failed to provide timely and proper notice of the claim. This is a "classic coverage defense" which must be set forth in a timely reservation of rights letter. *See King*, 552 F. Supp. 2d at 1317. Defense 17 appears to be based on the failure to mitigate damages. This is an affirmative defense that relates to this lawsuit, not GAIC's decision to grant or deny coverage for the claims. Defense 17 is not a coverage defense to which the statute applies. *See id.* Further, § 627.426(2) "applies only when the insurer totally denies coverage." *Hartford Ins. Co. of the Midwest v. BellSouth Telecomms., Inc.*, 824 So. 2d 234, 240 (Fla. 4th DCA 2002) (quoting *Pacific Employers Ins. Co. of L.A., Cal. v. Ott*, 545 So. 2d 462, 463 (Fla. 3rd DCA 1989)). In defense 17, GAIC does not seek to deny coverage but to limit its indemnity obligation. Accordingly, Arnett and RBC are entitled to partial summary judgment, but only as to GAIC's affirmative defense 7.

### B.    The failure to cooperate defense

To satisfy the judgment, Arnett attempted to attach RBC's property and assets. Without obtaining GAIC or MCC's consent, Rudy Brown signed an affidavit, averring that RBC would allow the execution, levy, and sale of its third party claims. The state court directed the sheriff to sell the

third party claims at a public auction. The sheriff's sale never occurred, however, because the parties settled the claims. MCC and GAIC contend that the impending sheriff's sale caused the claims to settle for less than fair value. Yet, the state court approved the settlement, finding it reasonable.

As a coverage defense, MCC and GAIC allege that RBC breached its duty to cooperate because they never consented to the settlement. MCC and GAIC rely on the following policy language:

> SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
> . . .
>
> 2. Duties In The Event Of Occurrence, Offense, Claim, Or Suit
> . . .
>
> c. You and any other involved insured must:
> . . .
>
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(*E.g.*, Dkt. 52-4, § IV). To establish a coverage defense under this provision, the insurer must demonstrate: (1) the insured failed to cooperate, (2) the failure to cooperate constituted a material breach, (3) the rights of the insurer were substantially prejudiced, and (4) the insurer exercised diligence and good faith in seeking to bring about the cooperation of the insured. *Mid-Continent Cas. Co. v. American Pride Bldg. Co., LLC*, 601 F.3d 1143, 1150 (11th Cir. 2010) (citing *Ramos v. Northwestern Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976)). At a minimum, there are genuine issues of material fact related to the first and fourth elements.

MCC and GAIC appear to claim that RBC breached its duty to cooperate by executing the affidavit. This, of course, ultimately led to the attachment of RBC's third party claims and the scheduling of the sheriff's sale. But on April 29, 2009, MCC and GAIC acknowledged that the

-17-

affidavit did not constitute a breach of RBC's obligations under the policies. (Dkt. 52-14 at 1). Other record evidence suggests that RBC did in fact cooperate. Upon receiving MCC and GAIC's reservation of rights letter, RBC filed an emergency motion to quash or stay the sheriff's sale.

Arnett and RBC have also raised material fact issues as to whether MCC and GAIC acted with diligence and in good faith. On March 6, 2009, the state court entered the order directing the claims to be sold at a public auction. Counsel appointed by MCC and GAIC to represent RBC was present and did not object to the attachment and sale of RBC's third party claims. The record contains no indication that MCC or GAIC objected until nearly two months later. Then, after the parties settled the third party claims, the state court conducted a hearing to determine whether the settlement was reasonable and should be approved. MCC and GAIC did not appear at the hearing to object, notwithstanding an invitation to do so. (Dkt. 62-16). There is sufficient evidence in the record to permit a reasonable jury to conclude that MCC and GAIC failed to act diligently and in good faith.

Further, Arnett and RBC have demonstrated that MCC and GAIC failed to provide a timely letter reserving the right to deny coverage based on the lack of cooperation defense. As noted, the state court directed the attachment and sale of the third party claims on March 6, 2009. Notwithstanding, MCC and GAIC did not reserve the right to raise the insured's lack of cooperation as a coverage defense until, at the earliest, May 4, 2009. Because this notice was untimely, § 627.426(2) estops MCC and GAIC from denying coverage based on RBC's alleged failure to cooperate.

## IV.  The supplementary payments provision

Relying on their contention that they have no obligation under the policies to indemnify RBC, MCC and GAIC contend that they are not obligated to pay the judgment for costs or any amounts

for an attachment bond because the policies do not apply to the damages awarded by the jury. This contention is unpersuasive.

The policies state:

> 1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
> . . .
>
> c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds. . . .
>
> e.  All costs taxed against the insured in the "suit."

(*E.g.*, Dkt. 52-4, § I, Supp. Payments). The policies define "suit" as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies *are alleged*." (*E.g.*, *id.*, § V.18) (emphasis added).

MCC and GAIC do not argue that the underlying action failed to allege damages to which the insurance applied. Rather, they simply contend that there is no coverage and therefore the policies do not apply. Having defended the action, the policies require MCC and GAIC to pay the judgment for costs and the cost of the attachment bond, regardless of whether the claims are or are not ultimately covered. *See Pacific Employers Ins. Co. v. Alex Hofrichter, P.A.*, 670 So. 2d 1023, 1025 (Fla. 3d DCA 1996) (supplementary payments provision requires insurer to pay cost judgment whether or not coverage exists).

The parties also dispute whether the policy requires MCC and GAIC to pay a judgment for attorneys' fees. Arnett and RBC represent that the state court has not determined whether Arnett is entitled to recover her attorneys' fees. (Dkt. 61, n.6). This issue is therefore not ripe for declaratory relief. *See Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir.1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability in a policy clause contest such as the one at bar until a judgment has been rendered against the insured since, until such

judgment comes into being, the liabilities are contingent and may never materialize.").

## V.    The motions to strike

The parties moved to strike certain affidavits and exhibits which relate to the failure to cooperate defense. Because MCC and GAIC are not entitled to summary judgment on their failure to cooperate defense, the motions to strike are moot.

MCC and GAIC also moved to strike the affidavit of Thomas Mack. As discussed, material issues of fact exist regardless of Mack's affidavit. The motion is therefore moot. In addition, MCC and GAIC request that Mack not be permitted to testify at trial because his affidavit was served after the expert witness disclosure deadline. Expert witnesses who do not comply with Fed. R. Civ. P. 26(a) are not entitled to testify "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). MCC and GAIC have not suffered prejudice from the opinion set forth in Mack's affidavit. This action is not presently set for trial. *See OFS Fitel, LLC v. Epstein, Becker, & Green, P.C.*, 549 F.3d 1344, 1364 (11th Cir. 2008). Further, Arnett and RBC timely disclosed Mack as an expert witness and provided a copy of his report from the state court proceeding. *See id.* at 1363. In any event, MCC and GAIC may re-depose Mack regarding the information in his affidavit. Mack is not precluded from testifying at trial.

### Conclusion

Accordingly, it is **ORDERED** that

1)    Plaintiffs' Amended Motion for Summary Judgment (Dkt. 61) is **GRANTED** *in part.* The motion is granted as to Defendants' affirmative defense 7 but is denied in all other respects.

2)    Defendants' motion for summary judgment (Dkt. 52) is **GRANTED** *in part*. MCC is not obligated to indemnify RBC for the final judgment in the underlying action under the July 2003 - July 2004 policy, the July 2004 - July 2005 renewal policy, or the July 2005 - July 2006 renewal policy. Defendants' motion is denied in all other respects.

3)	The motions to strike (Dkts. 67, 71) and the request for oral argument (Dkt. 60) are **DENIED**.

4)	This case is set for a non-jury trial in Courtroom 13B, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida during the trial term beginning **October 4, 2010.**

5)	The pre-trial conference is scheduled for **September 10, 2010** at **10:00 A.M.**

**DONE AND ORDERED** this 16th day of July, 2010.


*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record